

## NUMBER 13-10-00232-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

**EZEQUIEL CASTILLO, INDIVIDUALLY, MARIA
DE LOS ANGELES CASTILLO, INDIVIDUALLY
AND AS NEXT FRIEND FOR ASHLEY CASTILLO
AND EZEQUIEL CASTILLO JR., AND ROSA
SILVIA MARTINEZ, INDIVIDUALLY,**       **Appellants,**

**v.**

**FORD MOTOR COMPANY,**       **Appellee.**

### On appeal from the 404th District Court
### of Cameron County, Texas.

## MEMORANDUM OPINION ON REMAND

**Before Chief Justice Valdez and Justices Garza and Benavides
Memorandum Opinion on Remand by Chief Justice Valdez**

Appellants, Ezequiel Castillo, individually, Maria De Los Angeles Castillo,

individually and as next friend for Ashley Castillo and Ezequiel Castillo Jr., and Rosa Silva

Martinez, individually, appeal a take-nothing judgment in favor of appellee, Ford Motor

Company ("Ford"). Appellants contend on remand from the Texas Supreme Court that the evidence was factually insufficient to support the jury's finding that Ford proved its affirmative defense of fraudulent inducement. We affirm.

## I. BACKGROUND

After being involved in a roll-over accident, appellants sued Ford for design defects of their Ford Explorer's roof and in its handling or stability, and a jury trial was held ("*Ford I*"). *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 618 (Tex. 2014). At the time of the trial, appellants' attorney, Mark Cantu, began negotiating with Ford's managing counsel, Pete Tassie, for a settlement agreement. *Id.* Eventually, after several rejections of his offers, Cantu offered to settle for $1.96 million and Tassie offered to settle for $1.5 million. *Id.* In addition, Tassie recalled that Cantu had repeatedly stated that if the jury were to send a note about damages, his demand would increase to $3 million. *Id.* The next day, during the jury's deliberations, the jury foreperson, Cynthia Cruz Cortez, sent a note to the judge asking, "What is the maximum amount that can be awarded?" *Id.* at 619.

Ford's trial counsel, Eduardo Rodriguez, "immediately called Tassie in Michigan, and, without hesitation, Tassie obtained authority from his supervisor to settle the case for $3 million—the amount Cantu had said the day before he would demand if the jury were to ask a question about damages." *Id.* Shortly thereafter, "Cantu, who had been unavailable all morning, called Tassie. Cantu initially stated that his demand should be $10 or $15 million, but quickly agreed to settle the case for $3 million." *Id.* After discovering that the jurors were not discussing damages and that many of the jurors had voted in favor of Ford, Ford refused to pay the $3 million settlement. *Id.*

Appellants then sued Ford for breach of contract ("*Ford II*"), and in its defense, Ford claimed, among other things, fraudulent inducement. *Id.* A jury trial was held in *Ford II*. As set out by the Texas Supreme Court, during the *Ford II* trial, many of the jurors from *Ford I* testified to the following:

> Cortez kept trying to bring up the damages issue on her own, and sent the note against their specific requests that she not do so. These jurors also testified that all other notes were sent by unanimous agreement. One juror testified that on the morning the case settled—after the day-long recess caused by Cortez's absence—Cortez arrived in a "very happy, very upbeat" mood, and told the other jurors, "This will be settled today."

*Id.* at 620. The Texas Supreme Court summarized Cortez's testimony during the *Ford II* trial as follows:

> Unlike the other jurors who testified, Cortez could not recall any of the pertinent details of the trial or the jury deliberations. Notably, Cortez could not recall why she sent the note in question, why exactly she did not show up for the second full day of deliberations, or why she had left the courtroom so quickly after the settlement was announced. Cortez also could not recall her cell phone number or carrier at the time, but signed a release permitting Ford to search for all cell-phone records registered to Cortez during the time of the products-liability trial, using her name, address, and date of birth. After denying that she spoke with any attorneys during the trial, Cortez was asked to explain a phone call on September 21, 2004 to the purported private cell phone of attorney and State Representative Jim Solis. Initially, Cortez explained that her husband probably made the call. When other evidence made that explanation unlikely, she speculated that the phone records were those of another Cynthia Cortez.

*Id.*

The *Ford II* jury found in favor of Ford, and entered a take-nothing judgment against appellants on their breach of contract claim. *Id.* Appellants appealed, and we reversed finding that the evidence was legally insufficient to support the jury's finding that Ford justifiably relied on the juror note. *Id.* The Texas Supreme Court reversed our judgment finding that the evidence was legally sufficient to support the jury's verdict that Ford was

3

fraudulently induced to enter the settlement agreement, and it remanded the case to this Court to address appellants' factual sufficiency challenge to the evidence. *Id.* at 623.

## II. STANDARD OF REVIEW

We examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding in our factual sufficiency review. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). In reviewing a factual-sufficiency challenge to a finding on an issue on which the appellant did not have the burden of proof, we will set aside the verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

The fact-finder is the sole judge of the witnesses' credibility and may choose to believe one witness over another. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003). We may not substitute our own judgment for that of the jury, even if we would reach a different answer based on the evidence. *GTE Mobilnet of S. Tex. Ltd. P'ship v. Pascouet*, 61 S.W.3d 599, 616 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing *Maritime Overseas Corp.*, 971 S.W.2d at 407).

## III. DISCUSSION

In its supplemental brief on remand, appellants cite evidence in the record that they allege was favorable to them. However, it is clear that, as the finders of fact, the jury rejected this evidence and instead believed the witnesses and evidence that supported Ford's fraudulent inducement claim. The Texas Supreme Court concluded that the evidence was legally sufficient as follows:

> On the first element [of fraudulent inducement], the jury was instructed that a material misrepresentation is a "false statement of fact."

4

Castillo argues that the note sent by Cortez asked a question, and therefore cannot be a false statement of fact. Although the note does ask a question, statements of fact are clearly implied. . . . Because the note implies material statements that were false, we conclude that some evidence exists of the first element of fraudulent inducement.

On the second element, Ford was required to produce evidence establishing that the note was sent by or at the direction of the plaintiffs or their agents or representatives with knowledge it was false. Ford's theory was that Cantu, as plaintiffs' representative, directed Cortez to send the note.

. . . .

Here, there is enough circumstantial evidence to establish a pattern—a pattern that reasonably implicates Cantu in Cortez's fraudulent scheme to send the note.

. . . .

Contrary to the court of appeals' view, the trial evidence did not establish that Cantu's comments the day before the settlement were customary of plaintiff's attorneys, but rather the opposite. Tassie, who had negotiated for Ford for more than ten years, including several prior dealings with Cantu, had never heard such a specific contingency. Moreover, neither Cantu nor any of the other attorneys involved in the case had ever seen such a jury note before. Yet Cantu's comments forecast such a note and elaborated on the effect it would have on settlement negotiations. But the unusual nature and prescient timing of Cantu's statement is not the only circumstantial evidence supporting the jury's finding.

On the brink of a Ford victory, Cortez precipitated a day-long recess because of some serious illness or injury to one of her two children. At the trial of this case, however, Cortez could not recall the illness or injury that kept her at the hospital all night. The same day, Cantu, who had refused to lower his settlement demand below $15 million during weeks of previous negotiations, became more agreeable, reducing his demand to less than $2 million in just a matter of hours. Moreover, even after the surprising jury note inquiring as to the maximum amount of damages it could award in a case alleging damages of $35 million, Cantu remained agreeable to a settlement of less than ten percent of that amount. Viewing this circumstantial evidence in light of all the surrounding circumstances, the jury could reasonably infer from the evidence that Cortez initiated the recess in order to give Cantu more time to negotiate a settlement before the jury foreclosed that possibility.

The inferences become stronger when the circumstantial evidence raises the inference of fraud, and the parties alleged to have engaged in the fraud fail to offer any proof of their legitimate or honest motives. Here, the explanations offered for Cantu and Cortez's unusual and apparently coordinated conduct were lacking.

For instance, Cortez was unwilling to offer any explanation for her actions. Even when she was summoned to testify, she offered no explanation, claiming instead that she could not remember any of the relevant details of the trial or deliberations. As for Cantu, he denied ever making the prediction about the note, instead admitting that it would have been unreasonable to make such a statement. He further justified his willingness to discount the extremely favorable note, and accept a fraction of his original demand, on fear that one of his expert's testimony might provide Ford a fruitful appellate argument. While this concern possibly explains his settlement preference, it does not explain his willingness to give Ford such an extreme discount of the damages pled. The circumstantial evidence here is some evidence from which the jury could have reasonably inferred collusion between Cortez and Cantu in producing the fraudulent note.

Having found evidence that Cortez colluded with Cantu, who unquestionably knew that jury notes would be shown to Ford's attorneys, we necessarily find evidence of the third element—that Cortez sent the fraudulent note with the intent that Ford rely upon it.

As to the fourth element—that Ford did not know the representation was false and actually and justifiably relied upon the representation—there is legally sufficient evidence of reliance for the same reasons we have found some evidence of a material misrepresentation. Castillo argues that any reliance on the note which induced Ford to enter the settlement was unjustified because Ford could not assume that the note containing the damages question indicated that the jury had reached any particular determination in the sequence of its deliberations nor could Ford assume that the note indicated the views of the jury collectively. As discussed above, however, the note did impliedly state these very facts that the jury was deliberating damages and intended to award the maximum amount, as well as that the note was from the jury collectively. Accordingly, because there is some evidence that Ford had no knowledge that these implications were false, there was some evidence that Ford was justified to rely on these implications in entering the settlement agreement.

*Ford Motor Co.*, 444 S.W.3d at 621–23.

Appellants argue that the evidence was factually insufficient as to all elements of fraudulent inducement[1] because there was evidence of the following: (1) "A group of jurors wanted to ask about damages"; (2) "This group was led by [another juror,] Ofelia Ramos"; (3) "They wanted to send out a jury note about damages, and they ultimately did"; (4) "They had the same kind of concerns that ordinary jurors have in civil trials across the state"; (5) "They wanted to know about the money"; (6) "Anybody who has watched civil juries knows that this is a common concern of normal jurors"; (7) "Nobody on the jury had the slightest idea that the jury notes were visible to the litigants"; (8) the jury note constituted a question and could not have been a statement[2]; (9) Ramos directed Cortez to send out the complained-of note; (10) Cortez's lack of recollection of the events that transpired proves nothing[3]; (11) "Ford likely got its 'votes' [against finding liability for appellants' accident] because some jurors were using a criminal burden of proof. But jurors are not locked in until the end"[4]; (12) Cortez was unaware that the parties and attorneys would read the note[5]; and (13) "Ford had no right to assume that the note

---

[1] Ford prevailed on its fraudulent inducement claim because the jury found the following: (1) there was a material misrepresentation; (2) "sent by or at the direction of [appellants] or their agents or representatives with the knowledge it was false"; (3) "with the intent that [Ford] rely on the representation"; (4) "that [Ford] did not know the representation was false and actually and justifiably relied upon the representation"; and (5) "that [Ford] detrimentally relied upon the representation by entering into the settlement agreement." *Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 621–23 (Tex. 2014).

[2] Appellants state, "There was no misrepresentation. The jury's question made no representation at all, let alone a false or material one." However, as set out above, the Texas Supreme Court concluded that the jury note implied material statements that were false, and it concluded that the note constituted some evidence to support the jury's finding that there was a misrepresentation.

[3] The Texas Supreme Court disagreed and concluded that Cortez's inability to recall any details of her jury service or explain what had occurred combined with other circumstantial evidence was "some evidence from which the jury could have reasonably inferred collusion between Cortez and Cantu in producing the fraudulent note." *Id.* at 623.

[4] Appellants cite no evidence in the record supporting this claim.

[5] However, the Texas Supreme Court found that the evidence supported a finding by the jury that Cortez colluded with Cantu to defraud Ford and that Cantu "unquestionably knew that jury notes would be

indicated the position of all 12 jurors as opposed to a subset" and "Ford had no right to assume that the jurors could not even discuss damages along the way at any time they wanted."[6]

Although appellants cite to the above-listed evidence as not supporting the jury's findings on each element of fraudulent inducement, they have not acknowledged any of the evidence cited by the Texas Supreme Court that it found legally sufficient to support the jury's findings of each element. In addition, appellants have not explained how the above-cited evidence is *so contrary* to the verdict as to make it clearly wrong and unjust. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 761 (explaining that in order for this Court to properly apply our factual sufficiency review, when reversing on the basis of factual insufficiency, we must in our opinions, "state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict"); *Maritime Overseas Corp.*, 971 S.W.2d at 407 ("[W]hen reversing a trial court's judgment for factual insufficiency, the court of appeals must detail all the evidence relevant to the issue and clearly state why the jury's finding is factually insufficient or so against the great weight and preponderance of the evidence that it is manifestly unjust[, and] [t]he court of appeals must explain how the contrary evidence greatly outweighs the evidence supporting the verdict."). Moreover, the above-cited evidence was rejected or disbelieved by the jury in this case as explained by the Texas Supreme Court, including evidence that Ramos directed Cortez to send the note. And, as the supreme court set out, the jury heard evidence supporting the following:

shown to Ford's attorneys." *Id.*

[6] The Texas Supreme Court disagreed, stating: "As discussed above, however, the note did impliedly state these very facts that the jury was deliberating damages and intended to award the maximum amount, as well as that the note was from the jury collectively." *Id.*

(1) Cortez sent the note on her own initiative and without the other jurors' permission and over their objections; (2) Cantu predicted the "maximum damages" note on the evening before the note was sent by Cortez; (3) prior to sending the note, Cortez predicted that the case would "settle that day"; (4) the note constituted a material misrepresentation; (5) Cortez and Cantu exhibited unusual and suspicious behavior before Cortez sent the "maximum damages" note; (6) Cortez colluded with Cantu who unquestionably knew that the note would be provided to Ford's attorneys, which supported a finding that Cortez sent the note with an intent that Ford rely upon it; (7) the note impliedly stated that the jury was deliberating damages and intended to award the maximum amount and that the note was sent collectively; (8) Ford's attorneys entered the settlement agreement in response to the note; (9) Ford's attorneys understood the note to mean that the jury was deliberating damages; (10) a note such as Cortez's note is an extremely rare occurrence and "none of the lawyers had ever encountered one before"; and (11) all the other notes were sent by unanimous agreement of the jury.

Examining the entire record, considering both the evidence in favor of, and contrary to each element of fraudulent inducement, we cannot conclude that the weight of the evidence is so contrary to the jury's findings as to make those findings clearly wrong and unjust. *Dow Chem. Co.*, 46 S.W.3d at 242; *Maritime Overseas Corp.*, 971 S.W.2d at 406–07; *Cain*, 709 S.W.2d at 176. Thus, we conclude that the evidence was factually sufficient to support the challenged jury findings.[7] We overrule appellant's sole issue on remand.

---

[7] Appellants contend that "[t]here is no evidence of intent as required by the jury charge." However, the Texas Supreme Court has already disposed of this issue concluding that "Cortez sent the fraudulent note with the intent that Ford rely upon it." *See id.*

9

### IV.  CONCLUSION

We affirm the trial court's judgment.

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
12th day of November, 2015.